## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| **Alexis Brixey, individually and on behalf of all others similarly situated**<br><br>     *Plaintiffs,*<br><br>**v.**<br><br>**McAdoo′s Seafood Company, LLC d/b/a McAdoo′s Seafood Co. & Oyster Bar; and Wiggins Hospitality Group, LLC d/b/a La Cosecha Mexican Table**<br><br>     ***Defendants.*** | **No.**<br><br><br>**COLLECTIVE ACTION COMPLAINT** |

       The case implicates McAdoo′s Seafood Company, LLC and Wiggins Hospitality Group, LLC ("Defendants" collectively) and the underpayment of wages owed to their employees—Plaintiffs and other employees like Plaintiffs—including Defendants failure to pay the minimum wage rate mandated by federal law, 29 U.S.C. § 201, et seq. Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b).

## Table of Contents

I.      Summary of Action .................................................................................................3

II.     Parties ...................................................................................................................... 8

III.    Jurisdiction and Venue ............................................................................................ 9

IV.     Defendants are Required to Comply with the FLSA ............................................... 9

V.      Facts ......................................................................................................................10

VI.     Revised Field Operations Handbook and Dual Jobs Regulation ..........................19

VII.    Collective Action Allegations ...............................................................................21

VIII.   Cause of Action No. 1: Failure to Pay the Minimum Wage ..................................23

IX.     Cause of Action No. 2: Unlawful Kickbacks .......................................................23

X.      Wage Damages Sought.......................................................................................... 24

XI.     Jury Demand ..........................................................................................................25

XII.    Prayer for Relief....................................................................................................25

## I.     SUMMARY OF ACTION

1.     Defendants pay their servers and bartenders—including Plaintiff—wages that are less than the minimum wage. Instead of paying the minimum wage, it appears Defendants are attempting to take credit for the tips its employees earn to meet the minimum wage requirement.

2.     Under the FLSA's tip credit provision—an affirmative defense—an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers. However, there are strict requirements that must be met before an employer obtain and continue to utilize the "tip credit." See 29 U.S.C. 203(m).

3.     An employer may pay tipped employees as little as $2.13 per hour by taking a credit for a portion of their tips up to a maximum tip credit of $5.12 per hour. *See* 29 U.S.C. 203(m).

4.     An employer who wants to obtain the benefit of the tip credit must advise an employee *in advance* of its use of the tip credit of all the notice provisions under the FLSA. *See Id.* (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").

5.     That is, "an employer must inform tipped employees of its use of the tip credit including [1] the amount of the employee's cash wage, the amount of the tip credit claimed by the employer, [2] that the amount claimed may not exceed the value of the tips actually received, [3] that all tips received must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips, and [4] that the

tip credit shall not apply to any employee who has not been informed of all of these requirements." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5-6 (5th Cir. Mar. 18, 2022) (citing 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b)).

6.     Moreover, an employer must also provide written notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, the employer must provide all affected employees with <u>written</u> notice as follows: "[t]he amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3).

7.     In addition, to obtain a tip credit, the employer must show that it permitted its tipped employees to retain all their tips other than tips contributed to a valid tip pool—that is, a tip pool that is fully distributed solely among customarily and regularly tipped employees. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

8.     Moreover, an employer will not be permitted to take a tip credit where its tipped employees kick-back, either directly or indirectly, to the employer for anything other than "the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if [they] are customarily furnished by [the] employer to his employees." *Ettorre v. Russos*

*Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at \*9 (5th Cir. Mar. 18, 2022) (quoting 29 U.S.C. § 203(m)). In other words, an employer violates the tip credit if its tipped employees purchase uniform, tool, or any other item in connection with their employment "unless the 'facilities' it covers counts as a 'wage.'" *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at \*9 (5th Cir. Mar. 18, 2022).

9.     Also, an employer may only take a tip credit during limited times and when an employee is engaged in their tipped occupation. In other words, an employer is prohibited from taking a tip credit and paying its tipped employees the subminimum hourly tip credit rate to perform non-tipped work that is unrelated to the tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at \*4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at \*12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

10.     Moreover, an employer is also prohibited from taking a tip credit and paying its tipped employees the subminimum hourly tip credit rate to perform non-tipped work that is related to the employee's tipped occupation if the employee spends more than 20 percent of the

time performing such related work in any workweek. *See Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.,* 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendants' motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties.").

11.     Finally, if a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes. *See* 29 C.F.R. 531.56(f)(4)

12.     Defendants violated the FLSA by paying Plaintiff and the Collective Members less than minimum wage and Defendants committed multiple violations of the tip credit and therefore cannot rely on tips to supplement the subminimum hourly wages they paid to

Plaintiffs and the Collective Members:

    a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet their minimum wage obligations. For instance, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice. In addition, Defendants failed to inform Plaintiff in writing when the amount of the tip credit changed from the prior week.

    b. **Violation for illegal kickbacks for non-203(m) items:** Plaintiff was required to purchase certain clothing to work for Defendants, which reduced her wages below the minimum hourly wage required for tipped employees.

    c. **Violation for improper handling of tip pool including exerting unlawful control over Plaintiffs' tips vis-à-vis the tip pool:** Defendants did not distribute the tip pool pursuant to any agreement among its servers and cannot otherwise show that the tip pool was fully distributed solely among customarily and regularly tipped employees.

    d. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to sweeping, cleaning pictures and light fixtures, polishing silverware and glasses, cleaning ledges, cleaning bathrooms, deep cleaning the restaurant, scraping gum from underneath tables, preparing the potato bar, making butter balls, making bread, cleaning the soda machine, and applying Murphy Oil Soap to the hardwood on seats and booths.

    e. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week and for periods exceeding 30 minutes:** Plaintiff was required to perform greater than 20% of her time (and for periods exceeding 30 continuous minutes) in performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, bussing tables, wiping booths, refilling condiments, amongst other duties.

13. As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked. In other words, Defendants must

account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## II.    PARTIES

14.    Plaintiff, Alexis Brixey, is an individual and resident of Texas. Plaintiff Alexis Brixey was employed by Defendant within the three-year period preceding the filing of this lawsuit. Plaintiff Alexis Brixey has consented to be a party-plaintiff to this action as indicated by the notice of consent that will be filed with the Court.

15.    The Putative Server Collective Members ("Server Collective Members") are all current and former employees worked for Defendants as servers at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b).

16.    The Putative Bartender Collective Members ("Bartender Collective Members") are all current and former employees worked for Defendants as bartenders at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage. Collective Members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. See 29 U.S.C. § 216(b).

17.    At all times hereinafter mentioned, Plaintiffs and Collective Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

18.    Defendant McAdoo's Seafood Company, LLC is an entity formed under the laws of Texas and can be served with process by serving its registered agent, J. Patrick Wiggins, at 177 W.

Mill Street, New Braunfels, Texas 78130.

19.    Defendant Wiggins Hospitality Group, LLC is an entity formed under the laws of Texas and can be served with process by serving its registered agent, J. Patrick Wiggins, at 177 W. Mill Street, New Braunfels, Texas 78130.

### III.    JURISDICTION AND VENUE

20.    Personal jurisdiction exists over Defendants because they are both residents of the State of Texas.

21.    In addition, Defendants have sufficient minimum contacts with the State of Texas to confer personal jurisdiction. Defendants conduct business in Texas. Furthermore, Defendants contracted with and employ Texas residents, such as Plaintiff, to work for Defendants in Texas.

22.    This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), et. seq.

23.    Venue is proper in this District because at least one Defendant resides in this District. In addition, venue is proper because a substantial part of the events and omissions giving rise to this claim occurred in this District.

### IV.    DEFENDANTS ARE REQUIRED TO COMPLY WITH THE FLSA

24.    At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

25.    At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000 (exclusive of excise tax).

26.    At all material times, Plaintiffs and Collective Members were employees engaged in commerce or the production of goods for commerce.

27.    At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1). That is Defendants perform related activities through unified operation and common control for a common business purpose.

28.    Defendants hold themselves out to the public as though they are jointly operating the restaurants. Indeed, the restaurants hold themselves out as a unified entity to customers.

29.    In addition, Defendants interview and hire employees from the same pool of applicants. In fact, Defendants share employees between them, have a common management, pool their resources, operate from the same headquarters, and have common ownership.

30.    Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint. Thus, Defendants formed a "single enterprise" and are jointly and severally liable for the violations of the other.

## V.    FACTS

31.    Defendants own and operate the dining establishments commonly known as "La Cosecha Mexican Table" and "McAdoo's Seafood and Oyster Bar" where they employ servers and bartenders—Plaintiffs and the Collective Members—to serve customers who are dining at their restaurants.

32.    Plaintiff worked for Defendants from approximately September of 2020 until approximately June of 2022.

33.    Plaintiff worked for Defendants at, both, McAdoo's and La Cosecha.

34.    Plaintiff worked for as, both, a server and bartender.

35.    In exchange for their labor, Defendants pay their servers and bartenders an hourly wage that is far less than the federally mandated minimum wage.

36.    At all times, Defendants paid Plaintiff less than minimum wage.

37.    Because Defendants pay them less than minimum wage, their servers and bartenders must rely on tips left by customers to earn a living. *See Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 190 (5th Cir. 2015) (a tip is "'a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. . . . []'") (quoting 29 C.F.R. § 531.52) (emphasis added). The FLSA permits employers in some circumstances, where all conditions are satisfied, to take a credit for a portion of those tips to make up the difference between the subminimum hourly wage and the full minimum wage. This method of payment is known as a "tip credit" under the FLSA.

38.    Here, Defendants purportedly seek to take advantage of the tip credit by paying their servers and bartenders less than the minimum wage and relying on tips to offset Defendants' obligation to pay the full minimum wage.

33.    The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit. (See https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 28, 2023). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.

> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(Id.) (emphasis in original)

39.    Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the tip credit to meet its minimum wage obligations.

40.    In this case, Defendants did not satisfy the strict requirements to use the tip credit. For instance, Defendants maintained a policy and practice whereby they failed to provide Plaintiff and the Collective Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid to the tipped employee, (2) the amount by which the wages of the tipped employee are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not receive the notice.

41.    In addition, Defendants also failed to provide Plaintiff and its other servers and bartenders with **written** notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, "[t]he amount per hour which [Defendants took] as a tip credit" was **not** "reported to [Plaintiff and the Collective Members] **in writing** each time it [was] changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3) (emphasis added).

42.     Because Defendants failed to give Plaintiff and its other servers and bartenders notice of all the provisions required by the FLSA (including written notice of the contents required by 29 C.F.R. § 516.28(a)(3)), Defendants cannot rely on tips and assert the tip credit as an affirmative defense to their failure to pay Plaintiff and the Collective Members the minimum wage required by Section 206 of the FLSA.

43.     Second, Defendants did not allow Plaintiff and Collective Members to retain all tips as required by Section 203(m).

44.     For instance, Defendants subjected Plaintiff and the Collective Members to an illegal policy that required Plaintiff and the Collective Members to pay for their uniforms, tools, and other non-203(m) items. Plaintiff and the Collective Members paid for their own uniforms, shirts, dry cleaning, order books, cash shortages or walked tabs, and other incurred other expenses in connection with performing their job for Defendants.

45.     Because Plaintiff and the Collective Members paid for their uniforms, tools, and other non-203(m) items, Defendants violated the tip credit because the costs of these non-203(m) items is a retention of tips and violates condition two of 29 U.S.C. § 203(m). *See e.g., Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction drops cuts into the statutory minimum wage); *Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing

employers from exploiting § 203(m) deductions for profit.").

46.    Moreover, Plaintiff and the Server Collective Members were required to contribute a portion of their tips to a tip pool each shift. However, the FLSA requires that an employer ensure that "all tips received by [each] employee [be] retained by the employee . . .." 29 U.S.C. § 203(m). The sole exception to the requirement that employees retain all earned tips, when an employer takes the tip credit, is where the employer operates a lawful tip pool. *See id.* (requiring that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips"); 29 C.F.R. § 531.54 ("[V]alid mandatory tip pools . . . can only include those employees who customarily and regularly receive tips.").

47.    Moreover, Defendants violated the tip credit by unlawfully "exercising control over a portion of the[ir servers'] tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) (finding violation of the FLSA where employer exercised control over employee's tips in violation of the tip credit provisions).

48.    For instance, Defendants unilaterally determined how to allocate tips from the tip pool—there was no agreement among the servers regarding the allocation of their tips from the tip pool. *See Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) (holding "tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid.") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); *see also* 29 C.F.R. § 531.54 (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among

themselves"). Because Defendants unilaterally decided, without input or agreement from Plaintiff and the Collective Members, how to distribute the servers' tips from the tip pool, Defendants did not comply with the FLSA and thus cannot claim a tip credit.

49.    In addition, Defendants also illegally exercised control over Plaintiffs' and Collective Members' tips when Defendants chose to utilize the tip pool to reduce payroll and pad their bottom line. Indeed, Defendants cannot show that the tip pool was fully distributed solely among customarily and regularly tipped employees. *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (employer has "the burden to prove it operated a legal tip pool"); *see also Steele*, 826 F.3d at 242 ("The employer carries the burden to prove its entitlement to the tip credit."); *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (holding employer "has the burden of establishing its entitlement to the tip credit.").

50.    Because Defendants cannot show that they fully and lawfully distributed the tip pool solely among customarily and regularly tipped employees, Defendants cannot utilize the tip credit to pay Plaintiff and the Server Collective Members. *See e.g., Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) (holding that TGI Friday's had the burden to prove a valid tip pool arrangement after its servers brought suit questioning the validity of the tip pool); *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'").

51.    Defendants also maintained a policy and practice whereby servers and bartenders were required to perform non-tip producing side work unrelated to their tipped

occupations. Defendants continued compensating Plaintiff and the Collective Members at the subminimum "tip credit" rate while they were engaged in nontipped work (i.e. work unrelated to their jobs as servers and bartenders). To be sure, while performing these non-tip generating duties, Plaintiff and the Collective Members were performing work that did not include interacting with or serving customers—the type of work that does not generally evoke tipping generosity.

52.     These non-tipped duties include but are not limited to the following: sweeping, cleaning, polishing silverware and glasses, cleaning ledges, cleaning the restaurant, kitchen duties, breaking down stations, garnish, drink stations, restocking items, and many other activities that were not related to their tipped occupation as servers and bartenders.

53.     Defendants also maintained a policy and practice whereby Plaintiff, the Server Collective Members, and the Bartender Collective Members were required to spend a substantial amount of time, in excess of 20 percent, performing non-tip producing side work related to the employees' tipped occupation.

54.     Specifically, Defendants maintained a policy and practice whereby Plaintiff and the Collective Members were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to: setting up tables, cleaning tables, bussing tables, wiping booths, and other nontipped duties.

55.     Further, Defendants required Plaintiff and the Collective Members to perform non-tip producing work prior to the opening of the restaurant and after the restaurant closed. Indeed, Defendants required the Plaintiff and the Collective Members to arrive prior to the restaurant's opening for business, when there were no customers and no opportunities to earn

tips, to perform manual labor cleaning and setup duties. Likewise, Defendants required the Plaintiff and Collective Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they spent 31 minutes to two hours performing work before the restaurant was open and the same amount of time after the restaurant was closed performing non-tip producing work.

56.     However, Defendants continued paying Plaintiff and the Collective Members at the tip credit rate—less than minimum wage—while requiring them to perform these nontipped tasks. Many of the nontipped tasks that Defendants required Plaintiff and the Collective Members to perform are duties that should have been assigned to employees who Defendants are legally required to pay at or more than minimum wage.

57.     In other words, instead of assigning these tasks to an employee who Defendants are obligated to pay at least minimum wage, Defendants attempted to take advantage of the tip credit and assign these tasks to Plaintiff and Collective Members while continuing to pay them less than minimum wage.

58.     When Plaintiff and the Collective Members performed these non-tipped duties, they did not interact with customers and did not have an opportunity to earn tips.

59.     Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

60.     Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work

assignments, but Defendants failed to track to the specific tasks for Plaintiff or the Collective Members.

61.     Defendants use a point-of-sale system to record hours worked by their tipped employees. Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants.

62.     Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track to the specific tasks for Plaintiff and the Collective Members.

63.     In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

64.     However, Defendants did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

65.     Moreover, Defendants violated the FLSA by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for their uniform, including shirts, pants, and shoes. Defendants also had a strict policy requiring Plaintiff and Collective Members to pay to dry clean their uniforms. These expenses were primarily incurred for the benefit and convenience of Defendants.

66.     Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take credit for tips and offset their obligation to pay Plaintiff and the Collective Members the full minimum wage.

67.     As such, Plaintiff and the Collective Members were not compensated at the

federally mandated minimum wage.

68.     Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law, carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendants' method of paying Plaintiff and the Collective Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## VI.    REVISED FIELD OPERATIONS HANDBOOK AND DUAL JOBS REGULATION

69.     On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a standard for interpreting the dual jobs regulation that was different than the "80/20" rule that had existed at the time. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv- 1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

70.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October    8,    2019.    (See https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

71.    After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

72.    After delaying the effective date of the Final Rule (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

73.    After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

74.    Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.

75.    Here, Defendants illegally required Plaintiff and the Collective Members to perform non-tip producing work for an excessive period of time. Defendants required Plaintiff and the Collective Members to perform non-tipped for periods longer than 30 minutes during times when there was no opportunity to earn tips including before the restaurants were open for business, during their shifts, after the restaurants were closed, and other times when the

restaurants did not have customers and there was no opportunity to earn tips. During these times, Defendants continued to pay Plaintiff and Collective Members less than minimum wage while they were forced to perform their assigned non-tip producing duties, as noted above.

76.    Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the Collective Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## VII.    COLLECTIVE ACTION ALLEGATIONS

77.    Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

78.    Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as a server, bartender, or both for at least one week during the three-year period prior to the commencement of this action to the present.

79.    Plaintiff has actual knowledge, through conversations with her co-workers, that a collective of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

80.    Defendants employed other servers and bartenders who are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

81.    Like Plaintiff, the Server Collective Members and Bartender Collective

Members were not given proper notice of the tip credit provisions and performed substantial work that was unrelated to their tip producing duties for a significant period of time.

82.    Moreover, the Server Collective Members were also subject to the same unlawful tip pool.

83.    The other servers and bartenders employed by Defendants are similarly required to pay for uniforms, drying cleaning, and other items that were not board, lodging, or other facilities.

84.    The names and addresses of the Collective Members are available from Defendants' records. To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

85.    Although the exact amount of damages may vary among the Collective Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

86.    As such, the group of similarly situated employees ("Collective Members") can be defined as two separate collectives as follows:

> **Server Collective Members. All current and former employees worked for Defendants as servers at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.**
>
> **Bartender Collective Members. All current and former employees worked for Defendants as bartenders at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.**

### VIII.    CAUSE OF ACTION NO. 1: FAILURE TO PAY THE MINIMUM WAGE

87.    Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

88.    This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wage. See 29 U.S.C. § 206.

89.    Plaintiff and the Collective Members were paid hourly rates less than the minimum wage while working for Defendants.

90.    Plaintiff and the Collective Members were not exempt from the minimum wage requirements of the FLSA.

91.    Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Collective Members being paid less than the Federal minimum wage rate.

92.    Defendants' failure to pay the minimum wage to Plaintiff and the Collective Members in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA. 29 U.S.C. § 255(a).

### IX.    CAUSE OF ACTION NO. 2: UNLAWFUL KICKBACKS

93.    Plaintiff realleges and reasserts each of the foregoing paragraphs as if set forth in full herein.

94.    The expenses that Defendants required Plaintiff and Collective Members to pay for and the mandatory tip-outs that Defendants required from Plaintiffs and Collective Members constitute unlawful "kick-backs" to an employer, which is proscribed by the FLSA, 29 U.S.C. § 203(m).

95.    In addition, section 203(m)(2) provides that "[a]n employer may not keep tips

received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

96.    The unlawful kickbacks received or required by Defendants were obtained knowingly, willfully, intentionally, or in bad faith.

97.    Plaintiffs and Collective Members are entitled to an award of back pay for all unlawful kickbacks required by Defendants.

## X.    WAGE DAMAGES SOUGHT

98.    Plaintiff and the Collective Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

99.    Plaintiffs and Collective Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

100.    Plaintiffs and Collective Members are entitled to all their misappropriated funds, including repayment of all expenses Defendants required Plaintiffs and Collective Members to incur plus an equal amount as liquidated damages.

101.    Plaintiffs and Collective Members are entitled to an amount equal to all unpaid wages found due (including all their misappropriated tips and unlawful expenses incurred) as liquidated damages because Defendants' actions were not based upon good faith. See 29 U.S.C. § 216(b).

102.    Plaintiffs and Collective Members are entitled to recover damages for the past three (3) years because Defendants' violations were willful.

103.    Plaintiffs and Collective Members are entitled to recover their attorneys' fees and costs as required by the FLSA. See 29 U.S.C. § 216(b).

## XI.    JURY DEMAND

104.    Plaintiff hereby demands trial by jury.

## XII.    PRAYER FOR RELIEF

105.    For these reasons, Plaintiff respectfully requests that judgment be entered in her favor and against Defendants, jointly and severally, awarding Plaintiff and the Collective Members the following:

a.    For an order pursuant to Section 216 of the FLSA finding Defendants liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiffs (and those who join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips and paid business expenses) due to Plaintiffs (and those who join in the suit);

b.    For an order awarding Plaintiffs (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

c.    For an order awarding Plaintiffs (and those who join in the suit) all attorneys' fees incurred;

d.    For an order awarding Plaintiffs (and those who join in the suit) all costs and expenses incurred in pursuing this action; and

e.    For an order granting any such other and further relief as this Court deems just and appropriate.

\*        \*        \*

Respectfully submitted,


By: */s/ Drew N. Herrmann*
       Drew N. Herrmann
       Texas Bar No. 24086523
       drew@herrmannlaw.com
       Pamela G. Herrmann
       Texas Bar No. 24104030
       pamela@herrmannlaw.com

       **HERRMANN LAW, PLLC**
       801 Cherry St., Suite 2365
       Fort Worth, TX 76102
       Phone: 817-479-9229
       Fax: 817-840-5102
       ATTORNEYS FOR PLAINTIFF
       AND COLLECTIVE MEMBERS