IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEXIS BRIXEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; JENIFFER LOPEZ, MADISON HALL, BAILEY ALFORD, ALEC SEEHAUSEN, LAUREN THOMPSON, CAIDEN LONGORIA, ALEXANDRA KOPP, ALEXANDER NICKERSON, RYEN WESCOTT, AUSTIN CONRAD, EMILEE OVERFIELD, MEG KEAVUTZ, KURT R. MCDANIEL, ZACHARY ELLIOT, MYA SHARP, MAESON DAHL, ALEXUS JONES, JAVEON EDWARDS, COLE LEWIS KLEINMAN, RYLEE DAHL, KYNDALL NILIUS, NADIA PEREZ, SAMANTHA VELAZQUEZ, MEGAN BOUTWELL, JAMES CLARKE, KENZIE MCCLURE, RAUL OLVERA, CRISTY RIVERA, OMAR GONZALEZ, MICHELL PARKS, CAMERON LAUREL, LAUREN PHILLIPS, GABRIELLE RODRIGUEZ, NICHOLAS DANIEL SNARPONIS, JONATHAN SAUCEDO, LAUREN OUSMAN, ISAAC MUNOZ, NICOLAS BETANCOURT, CASSANDRA VELASQUEZ, ANDREW ARROYO, SYDNEY ANDERSON, SAVANAH MAESTAS, ALANAH GALLEGOS, PATRICK ROA-VALENZUELA, TIMOTHY RYAN, TIFFANY ZEMPEL, LUISANGEL ANDRADE, ALANA DEVEREAUX, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | SA-23-CV-00232-DAE |
| *Plaintiffs,* | § § § | |
| vs. | § § § | |
| MCADOO'S SEAFOOD COMPANY, LLC,  WIGGINS HOSPITALITY GROUP, LLC, | § § § § | |
| *Defendants.* | § § § | |

1

## ORDER

Before the Court in the above-styled cause of action is Plaintiffs' Motion for Court-Authorized Notice [#27].  By their motion, Plaintiffs ask the Court to approve proposed notice and consent forms in this putative collective action arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  The Court held a hearing on the motion on December 5, 2023, at which counsel for both Plaintiffs and Defendants appeared via videoconference.  After considering the arguments of counsel at the hearing, the written response and reply to the motion [#31, #35], the record, and the governing law, the Court will grant the motion and issue notice for the reasons that follow.

## I.  Background

Plaintiff Alexis Brixey filed this action on behalf of herself and all others similarly situated against two restaurants, McAdoo's Seafood Company, LLC d/b/a McAdoo's Seafood Co. & Oyster Bar ("McAdoo's") and Wiggins Hospitality Group, LLC d/b/a La Cosecha Mexican Table ("La Cosecha"), alleging the underpayment of wages owed to their employees in violation of the FLSA.  Plaintiff's Complaint alleges that Defendants pay their servers and bartenders wages that are less than a minimum wage by misapplying the FLSA's tip-credit provision.  *See* 29 U.S.C. § 203(m).  The District Court issued an initial Scheduling Order to govern discovery related to the issuance of notice to the putative class.  Since the filing of Plaintiff's Complaint, almost 50 additional Plaintiffs have opted in to the suit.  The parties engaged in discovery, and Plaintiffs filed their motion for notice currently before the Court.  The motion is ripe for review.

## II.  Legal Standard

An FLSA case may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."   29 U.S.C.  § 216(b).   "A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  The Fifth Circuit recently clarified the standard for evaluating whether notice should issue to a class of similarly situated employees under the FLSA in *Swales v. KLLM Transportation Services, LLC*, 985 F.3d 430 (5th Cir. 2021).  In *Swales*, the Fifth Circuit rejected the two-step *Lusardi* method of "conditional certification" and "decertification" previously employed by the majority of district courts in favor of a more rigorous inquiry into whether a group of employees is in fact similarly situated.  *Loy v. Rehab Synergies*, 71 F.4th 329, 336–37 (5th Cir. 2023); *Swales*, 985 F.3d at 434.

The *Swales* standard requires a district court to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated' and to "authorize preliminary discovery accordingly."  *Loy*, 71 F.4th at 336 (quoting *Swales*, 985 F.3d at 441).  The focus of the district court in evaluating whether to issue notice should be on "whether merits questions can be answered collectively."  *Swales*, 985 F.3d at 442.  However, in doing so, district courts must be careful not to "signal approval of the merits or otherwise stir up litigation."  *Id.* at 434.  "If answering the merits questions 'requires a highly individualized inquiry into each potential opt-in's circumstances,' then the employees are likely not similarly situated" and notice should not be issued.  *Loy*, 71 F.4th at 336 (quoting *Swales*, 985 F.3d at 442).

Although *Swales* rejected the two-step *Lusardi* standard, the Fifth Circuit has approved the continued consideration of the *Lusardi* factors by district courts faced with a motion for FLSA notice. *Loy*, 71 F.4th at 336–37. These factors include (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Id.* Ultimately, district courts continue to have "broad, litigation-management discretion" in evaluating whether to issue notice, "cabined by the FLSA's 'similarly situated' requirement." *Id.* at 337 (quoting *Swales*, 985 F.3d at 443). Under the governing standard, Plaintiffs continue bear the burden of demonstrating they are similarly situated. *Swales*, 985 F.3d at 443.

## III.  Analysis

Plaintiffs' motion asks for an order approving notice of this lawsuit to two separate sub-classes of employees working at McAdoo's and La Cosecha restaurants in order to provide them the opportunity to join this suit as opt-in Plaintiffs:

> **Server Collective Members:** All current and former employees who worked for Defendants as servers at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.

> **Bartender Collective Members:** All current and former employees who worked for Defendants as bartenders at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.

For the reasons that follow, the Court finds Plaintiffs have carried their burden to demonstrate that servers working at McAdoo's and La Cosecha restaurants and the bartenders working at McAdoo's and La Cosecha restaurants are similarly situated to one another regarding the FLSA claims asserted in this suit and that the merits issues raised in this case can be collectively

adjudicated such that notice should be issued to the two proposed classes, with only the time frame modified.

**A.      FLSA's Tip-Credit Provision and the Merits Issues in this Case**

Again, this case alleges the failure to pay minimum wage and the misapplication of the FLSA's tip-credit provision.  The FLSA sets the national minimum wage at $7.25 per hour.  29 U.S.C. § 206(a)(1).  There is an exception to the minimum wage requirement that permits employers to pay less than minimum wage to a tipped employee as long as the employee's tips make up the difference between the $2.13 minimum wage and the national minimum wage.  *Id.* § 203(m).  This exception is referred to as a "tip credit."  *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015).  The FLSA's tip-credit provision is an affirmative defense on which the employer bears the burden of proof.  *Id.* at 189.

Several aspects of the tip credit are implicated by this case.  According to the Complaint, Defendants violated the FLSA's tip-credit provision in five respects.  As a result of these violations, Plaintiffs argue Defendants have lost the ability to use the tip credit and must compensate Plaintiffs and all other similarly situated workers at the full minimum wage rate for all hours worked.

First, Plaintiff allege Defendants failed to adequately inform their servers and bartenders of the use of the tip credit in contravention to the provision's notice requirement.  To be eligible for the tip credit, the employer must provide employees with notice of its intent to take a tip credit.  29 U.S.C. § 203(m)(2)(A)(ii) (stating that the tip-credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer" of the tip-credit provisions).  To meet the FLSA's notice requirement, the employer must at a minimum inform its tipped employees of its use of the tip credit, including (1) the amount of the

employee's cash wage, (2) the amount of the tip credit claimed by the employer, (3) that the amount claimed may not exceed the value of the tips actually received, and (4) that all tips received must be retained by the employee except for a tip-pooling arrangement limited to employees who customarily and regularly receive tips. *See Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 WL 822181, at *2 (5th Cir. Mar. 18, 2022) (citing 29 C.F.R. § 531.59(b)). The tip credit shall not apply to any employee who has not been informed of all of these requirements. *Id.*

Second, Plaintiffs allege Defendants improperly deducted the cost of certain items from employee pay in violation of the anti-kickback provision. An employer will not be permitted to take a tip credit where its tipped employees kick-back, either directly or indirectly, to the employer for anything other than "the reasonable cost" of furnishing an employee with "board, lodging, or other facilities," if they are customarily furnished by the employer to his employees. 29 U.S.C. § 203(m)(1); 29 C.F.R. § 531.35. In other words, an employer violates the tip credit if its tipped employees purchase uniform, tool, or any other item in connection with their employment "unless the 'facilities' it covers counts as a 'wage.'" *Ettorre*, 2022 WL 822181, at *3 (quoting 29 U.S.C. § 203(m)).

Third, Plaintiffs allege Defendant failed to properly distribute the tip pool solely among tipped employees. Generally, "an employer may not claim the tip credit unless a tipped employee is permitted to retain all of his tips." *Montano*, 800 F.3d at 188 (citing 29 U.S.C. § 203(m)). The FLSA provides a limited exception to this rule by permitting "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A)(ii). "If an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit." *Montano*, 800 F.3d at 189.

Fourth and fifth, Plaintiffs contend that Defendants required their servers and bartenders to perform non-tipped work unrelated to the tipped occupation and required their servers and bartenders to perform non-tipped side work unrelated to the tipped occupation for more than 20 percent of the workday and for periods exceeding 30 minutes. (Compl. [#1], at 7.) An employer may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation. 29 C.F.R. § 531.56(f). Where an employee performs more than one job for the same employer (one that generates tips and one that does not), such employees are entitled to the full minimum wage rate while performing the job that does not generate tips. *See* 29 C.F.R. § 531.56(e). The Department of Labor 1988 Field Operations Handbook provides additional guidance on the interpretation of this dual-jobs regulation, stating that if a tipped employee spends more than 20% of time performing related but non-tipped work, such as general preparation work or cleaning and maintenance, then the employer may not take the tip credit for the amount of time the employee spends performing those duties. DOL Handbook (1988) § 30d00(e). Finally, this non-tipped work (supporting tipped work) may not be performed for a continuous period of time exceeding 30 minutes. *See* 29 C.F.R. 531.56(f)(4).

**B.      Plaintiffs are similarly situated as to Defendants' use of a tip credit.**

The evidence before the Court establishes that all servers and bartenders (who were not paid a direct wage of at least minimum wage) working at both McAdoo's and La Cosecha during the relevant period were subject to the same general compensation and employment policies with regard to compensation and tip pooling. Additionally, Defendants' tip-credit defense is not individual to each Plaintiff and can be adjudicated collectively.

Defendants are two locally owned "upscale" restaurants in New Braunfels, Texas, owned by the same family and share a single general manager, Scott Rouhselang, who oversees

operations of the restaurants and provides instructions to each restaurant's assistant manager. (Rouhselang Decl. [#32-3], at ¶¶ 2–6.)  Both restaurants employ both servers and bartenders, as well as food runners, bussers, and hosts.  (*Id.*)  All servers and bartenders therefore share similar employment settings with the same individual owners and overall manager in the same geographic location; the proposed classes do not span disparate locations or require discovery from numerous different supervisors regarding compensation policies.

The record also demonstrates that all servers and bartenders performed the same or similar work under the same terms, pay provisions, and policies and practices relevant to this suit.  Plaintiffs are servers and bartenders providing food and beverage service to customers; the general tasks each Plaintiff performs are substantially similar.  It is undisputed that both restaurants pay their servers a subminimum hourly wage, require their servers to contribute to a mandatory tip pool, and utilize the FLSA's tip-credit provision to satisfy national wage requirements.  (*Id.* at ¶ 6.)  McAdoo's bartenders are also compensated a subminimum hourly wage plus tips and required to participate in the tip pool.  (*Id.*)

However, the record also establishes that only some of La Cosecha's bartenders were paid pursuant to a tip credit prior to August 24, 2022, but since that time La Cosecha has paid its bartenders at least $10.00 per hour.  (*Id.* at ¶¶ 6–7.)  Defendants attempt to argue that this difference regarding the La Cosecha bartenders makes collective treatment unworkable.  The Court disagrees.  The classes identified by Plaintiffs already exclude any server or bartender who was paid a direct hourly wage of at least minimum wage.  If a La Cosecha bartender falls under the class definition for only part of the relevant period and chooses to opt into the suit, that bartender's entitlement to damages would be evaluated individually based on his or her own pay records just like all of the Plaintiffs.  This distinction does not affect the Court's ability to

adjudicate whether the tip credit was properly applied to those bartenders who were not paid minimum wage or who worked for La Cosecha prior to this policy change.

The declarations of the lead Plaintiff, Alexis Brixey, and several opt-in Plaintiffs illustrate the similarities between class members with respect to the key aspects of their compensation.  Brixey worked for both McAdoo's and La Cosecha from July 2021 to May 20022 as both a server and bartender.  (Brixey Decl. [#28-22], at ¶¶ 3–4.)  At both restaurants and in both roles, Brixey received an hourly wage of less than $7.25 per hour and was required to participate in a mandatory tip pooling arrangement in which she was required to contribute 3.5% of tips earned each shift to the tip pool.  (*Id.* at ¶¶ 5–7.)  Several other Plaintiffs stated the same in their declarations.  (Dahl Decl. [#28-23], at ¶ 5; Olvera Decl. [#28-24], at ¶ 5; Lopez Decl. [#28-25], at ¶ 5; Ryan Decl. [#28-26], at ¶ 5; Nickerson Decl. [#28-27], at ¶ 5.)  Brixey and the other Plaintiffs who authored declarations all additionally state that this tip pool was shared with bar workers, bussers, and hosts, even when those additional employees did not work during the shift in which the tips were earned.  (Brixey Decl. [#28-22], at ¶ 7; Dahl Decl. [#28-23], at ¶ 5; Olvera Decl. [#28-24], at ¶ 6; Lopez Decl. [#28-25], at ¶ 6; Ryan Decl. [#28-26], at ¶ 5; Nickerson Decl. [#28-27], at ¶ 5.)  At both restaurants, Brixey and the other declarants were also required to contribute an additional portion of tips to the pool on Friday and Saturday nights and Sunday mornings to be shared with "food runners" and "drink runners."  (Brixey Decl. [#28-22], at ¶ 8; Dahl Decl. [#28-23], at ¶ 6; Olvera Decl. [#28-24], at ¶ 7; Lopez Decl. [#28-25], at ¶ 7; Ryan Decl. [#28-26], at ¶ 6; Nickerson Decl. [#28-27], at ¶ 6.)

Defendants attempt to defeat collective treatment by asserting that the tip pool at La Cosecha is comprised differently because hosts at that restaurant receive tips directly from takeout customers while hosts at McAdoo's do not regularly receive tips.  Yet, Defendants also

conceded at the Court's hearing that there are enough commonalities between the two restaurants that they did not wish to request severance of this case into two actions.  A slight difference in the composition of the tip pool does not outweigh the other similarities weighing in favor of collective treatment detailed herein.

The deposition testimony of Mr. Rouhselang and Defendants' responses to Plaintiffs' interrogatories establish the same—that the servers at La Cosecha and McAdoo's were all paid an hourly wage of less than the minimum wage ($2.13 per hour) and required to contribute 3.5 percent of their tips to a tip pool, as well as an additional amount on Friday and Saturday nights and Sunday mornings.  (Rouhselang Dep. [#28-28], at 52:20–53:17, 68:25–69:11; McAdoo's Interrogatory Resp. [#28-29], at 3; La Cosecha Interrogatory Resp. [#28-30], at 3.)  Defendants also stated in their interrogatory responses that all bartenders at both restaurants are paid utilizing a tip credit at $2.13 per hour plus gratuity (with the exception of the La Cosecha bartenders who were paid at least the statutory minimum wage beginning in August 2022).  (McAdoo's Interrogatory Resp. [#28-29], at 3; La Cosecha Interrogatory Resp. [#28-30], at 3.)  Indeed, after the filing of this suit, Defendants now require all of their employees to sign the same "Tip Credit Agreement," whether they work at McAdoo's or La Cosecha or work as bartenders or servers. (McAdoo's Tip Credit Agreement [#28-4, #28-5]; La Cosecha Tip Credit Agreements [#28-6, #28-7].)

Additionally, the evidence demonstrates that all servers and bartenders were required to perform non-tip producing side work unrelated to their tipped jobs as servers and bartenders (such as bussing tables, running food, polishing glassware, sorting silverware, preparing bread, restocking butter, and cleaning the restaurant), and were compensated for that work at an hourly wage below the required minimum wage.  (Brixey Decl. [#28-22], at ¶¶ 10–11; Dahl Decl. [#28-

23], at ¶¶ 7–10; Olvera Decl. [#28-24], at ¶¶ 8–10; Lopez Decl. [#28-25], at ¶¶ 8–10; Ryan Decl. [#28-26], at ¶¶ 8–10; Nickerson Decl. [#28-27], at ¶¶ 7–10.)  This work was often performed at the beginning or end of a shift before the restaurants opened or after the restaurants closed. (Brixey Decl. [#28-22], at ¶¶ 10–13; Dahl Decl. [#28-23], at ¶ 12; Olvera Decl. [#28-24], at ¶ 11; Lopez Decl. [#28-25], at ¶¶ 11; Ryan Decl. [#28-26], at ¶ 10; Nickerson Decl. [#28-27], at ¶ 10.) Brixey and the opt-in Plaintiffs estimate that they regularly spent more than 20% of their time each work shift in each workweek performing these non-tipped job duties and would often spend more than 30 continuous minutes doing such work.  (Brixey Decl. [#28-22], at ¶¶ 10–13; Dahl Decl. [#28-23], at ¶¶ 12–14; Olvera Decl. [#28-24], at ¶¶ 12–15; Lopez Decl. [#28-25], at ¶¶ 12– 14; Ryan Decl. [#28-26], at ¶¶ 11–14; Nickerson Decl. [#28-27], at ¶¶ 12–14.)

Defendants argue that the nature of the required side work varied between the two restaurants and depending on whether the employee worked as a server or a bartender and that this fact cuts against evaluating the merits collectively.  The Court disagrees.  Mr. Rouhselang testified that all bartenders and servers at La Cosecha and McAdoo's perform opening and closing side work.  (Rouhselang Dep. [#28-28], at 30:1–31:1.)  The record also contains various documents detailing the side work, daily bar duties, opening and closing checklists, and room cleaning charts for both restaurants.   (McAdoo's Bar Duties [#28-12]; McAdoo's Server Sidework [#28-13]; La Cosecha Server Set Up [#28-14]; McAdoo's Opening Checklist [#28-15]; La Cosecha Opening Checklist [#28-16]; McAdoo's Closing Checklist [#28-17]; La Cosecha Closing Checklist [#28-18]; McAdoo's Room Cleaning Chart [#28-19]; La Cosecha Room Cleaning Chart [#28-20].)  These documents establish that the type and amount of side work required by servers at both restaurants is similar enough for collective treatment; the same can be said for bartenders at both restaurants.  The fact that some employees typically warmed bread

11

and others stocked garnishes or that bartenders at La Cosecha have a shorter opening checklist than those at McAdoo's due to the smaller bar set up are not reasons to deny Plaintiffs' motion for notice.  The common issue is whether Defendants required servers and bartenders to perform side work unrelated to their tipped occupations, and the Court finds that this issue predominates over any individual differences regarding the precise type of such work.  *See Paschal v. Perry's Rests., Ltd.*, No. 1:22-CV-00027-RP, 2023 WL 2784864, at *6 (W.D. Tex. Apr. 4, 2023), *report and recommendation adopted*, No. 1:22-CV-27-RP, 2023 WL 3483902 (W.D. Tex. May 16, 2023) ("Although Plaintiffs differ in which area of the restaurant they served and whether they were designated as an opener or closer, the Court finds that the common issue whether Defendants required servers to perform unrelated side work or significant amounts of related side work predominates over individual differences.").

The evidence also demonstrates that the question of whether Defendants improperly deducted non-203(m) "facilities" can be answered collectively.  Brixey states in her declaration that she paid for mandatory uniforms, tools, and other business-related items such as server books, wine keys, lighters, pens, dry cleaning, walked tabs, TABC certifications, and her food handler license that were required to work at both McAdoo's and La Cosecha.  (Brixey Decl. [#28-22], at ¶ 17.)  The opt-in Plaintiffs state the same in their respective declarations.  (Dahl Decl. [#28-23], at ¶ 15; Olvera Decl. [#28-24], at ¶ 16; Lopez Decl. [#28-25], at ¶ 17; Ryan Decl. [#28-26], at ¶ 15; Nickerson Decl. [#28-27], at ¶ 15.)  The record also contains copies of McAdoo's and La Cosecha's "Uniform Agreement," which prices the "Servers Package" of a black bistro apron, server book, and wine key, at $20.00 and states the amount will be deducted from the server's first paycheck.  (McAdoo's Uniform Agreements [#28-8]; La Cosecha Uniform Agreements [#28-9].)  Mr. Rouhselang testified in his deposition that Defendants do not

reimburse servers and bartenders for the TABC certification, which is required for all servers and bartenders at both restaurants.  (Rouhselang Dep. [#28-28], at 64:2–65:7.)

Defendants do not advance any persuasive arguments as to why this and other aspects of their tip-credit defense cannot be adjudicated collectively.  Instead, they spend much of their response to Plaintiffs' motion arguing the actual merits of the defense—that they did not improperly deduct non-203(m) materials from employee paychecks; that they did not improperly conduct their tip pools; and that they did not require too much side work.  Defendants even go so far as arguing that the Court "should review evidence of whether there is even a violation of the FLSA before certifying a class."  (Resp. [#31], at 6–7.)  Yet, nothing in *Swales* directs courts to adjudicate the merits of a claim or defense during the notice stage of an FLSA collective action.  Rather, courts may consider the merits of a claim only insofar as the court is evaluating whether there are merits issues to be adjudicated collectively.  None of Defendants' arguments regarding Plaintiffs' ability to ultimately prove their FLSA claims are appropriate for the Court's consideration at this stage of the proceedings.  And, moreover, any variation among collective members regarding the alleged improper deductions from Plaintiffs' paychecks is an issue that primarily affects damages and does not prevent collective treatment.

Finally, regarding the notice issue, Brixey's and the opt-in Plaintiffs' declarations all state they were not provided the required notice of the "tip credit" amount claimed for the tips they earned.  (Brixey Decl. [#28-22], at ¶ 18; Dahl Decl. [#28-23], at ¶ 16; Olvera Decl. [#28-24], at ¶ 17; Lopez Decl. [#28-25], at ¶ 18; Ryan Decl. [#28-26], at ¶ 16; Nickerson Decl. [#28-27], at ¶ 16.)  The record also contains an employee handbook developed *after* this lawsuit was filed that details Defendants' compensation policies regarding the use of the tip credit and tip pooling to satisfy the FLSA's minimum wage requirement.  (Handbook [#28-1].)  And, as previously noted,

all of Defendants' employees—regardless of being a server or bartender or working at McAdoo's versus La Cosecha—are now required to sign a tip credit agreement.  (McAdoo's Tip Credit Agreement [#28-4, #28-5]; La Cosecha Tip Credit Agreements [#28-6, #28-7].) Importantly, Mr. Rouhselang conceded in his deposition that the document provided to employees prior to this lawsuit (and during the relevant period) misinformed employees of the percentage breakdown of the tip pooling arrangement.  (Rouhselang Dep. [#28-28], at 59:20–62:12, 83:7–84:22.)

Nonetheless, Defendants argue that Plaintiffs have not identified specific facts that could support the allegation that they were not informed about the tip credit, such as who handled their employment interview, who conducted their onboarding, or who handled their training shifts and that the notice requirement can only be adjudicated with extensive inquiry into each employee's individual circumstances.  Defendants provide the Court with a number of declarations from current employees of La Cosecha and McAdoo's who do not wish to participate in this lawsuit who state that they personally understood the key aspects of Defendants' tip-credit policy and their compensation structure while working for Defendants.  (*See, e.g.*, Oriti Decl. [#32-4], at ¶¶ 3–6.)   These declarations reference oral communications from Mr. Rouhselang and others regarding the tip pool and tip credit provided during employee interviews, orientation, and training. (*See, e.g.*, *id.* at ¶ 6; Trujillo Decl. [#32-10], at ¶ 5.)

These declarations do not defeat Plaintiffs' request for notice because, even assuming that some employees were aware of the tip-credit and tip-pooling policies employed by Defendants, there is no evidence before the Court that any manager or supervisor during the relevant period was ever instructed to provide all four elements of notice required by the regulations to servers and bartenders during onboarding and training.   Furthermore, the

declarations submitted by Defendants emphasize individual employees' "understanding" of Defendants' compensation policies rather than the specific information provided by supervisors and managers. (*See, e.g.*, Trujillo Decl. [#32-1], at ¶¶ 3–4.)  The declarations also indicate that employees may have been "made aware" of the tip credit and tip-pool structure by studying checkout calculations at the end of each shift and by reviewing paystubs. (*Id.*)  An employee's ability to deduce facts and draw inferences regarding the use of a tip-credit does not satisfy the FLSA's requirement that they be provided notice regarding specific aspects of the policy. Finally, the Court notes that the failure to inform Plaintiffs about the tip-credit is only one of numerous alleged violations of the FLSA in Plaintiff's pleadings.  In summary, there is no evidence of a consistent policy or practice of fully informing employees regarding the use of a tip credit and tip-pooling.  This fact, in combination with Plaintiffs' declarations that they did not receive the required notices, satisfies Plaintiffs' burden to establish a class of similarly situated employees of Defendants regarding the tip-credit's requirements appropriate for collective adjudication.

**C.      Fairness and procedural considerations support providing notice.**

Finally, with some minor modifications to Plaintiffs' proposed notice, fairness and procedural considerations also support providing notice to the proposed classes.  This factor requires consideration of the FLSA's objectives of lowering costs to the plaintiffs by pooling resources and efficiently resolving common issues of law and fact arising from the same accused activity while avoiding prejudice to any party.  *See Adams v. Absolute Consulting, Inc.*, No. 6:20-CV-01099-ADA-DTG, 2023 WL 3995072, at *3 (W.D. Tex. June 12, 2023); *Torres v. Chambers Protective Servs.*, No. 5:20-CV-212-H, 2021 WL 3419705, at *9 (N.D. Tex. Aug. 5, 2021).  There are already almost 50 bartenders and servers who have opted into this suit as

Plaintiffs.  Even without issuing the requested notice, this case is going to be collectively adjudicated.  Concerns regarding fairness and efficiency support providing notice to any remaining class members who are not aware of the suit and would also like to have their claims considered by the Court.

The Court rejects Defendants' suggestion that the Court certify four instead of two subclasses for purposes of notice.  Defendants' proposal does not advance any of the procedural considerations underlying collective treatment of Plaintiffs' claims.  Defendants' proposal suggests separating the classes by restaurant and conditioning notice on more specific factual considerations (e.g., McAdoo's servers who engaged in bread-warming side work; La Cosecha servers who had apron, wine key, and server book deducted from their paycheck).  At this juncture of the case, all of Plaintiffs' allegations regarding Defendants' violations of the FLSA's tip-credit provision remain in the case and the Court declines to further limit the class factually.  Furthermore, as previously noted, Defendants conceded at the hearing that McAdoo's and La Cosecha were not so dissimilar so as to warrant severing Plaintiffs' claims into two separate lawsuits based on restaurant.

**D.     The Court will approve Plaintiffs' proposed notice and consent forms with minor modifications.**

Plaintiffs' proposed notice requests that Defendants be given 14 days to present (in electronic format) a list of names, last known addresses, other contact information, and dates of employment for all class members who worked for Defendants at any time within the three years since the Complaint was filed.  Plaintiffs then propose requiring 21 days following the production of this list to issue the actual notice by mail, email, and text message to the class members.  Plaintiffs suggest that they then be required to file an advisory with the Court within three days of issuing notice regarding the delivery of the notice and consent forms.  Plaintiffs

propose an opt-in period of 90 days and permitting a reminder notice after 30 days.  Finally,

Plaintiffs propose an opt-in deadline of 15 days after the close of notice period for class counsel

to file all signed consents to join with the Court.

The Court finds the majority of these proposed procedures to be reasonable.  The only

modifications the Court will make to these proposals are that the Court will reduce the opt-in

period from 90 to 60 days and will endorse Defendants' request that the class period run from

three years from the date of notice, not the filing of the Complaint as proposed by Plaintiffs.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Court-Authorized Notice

[#27] is **GRANTED** as follows:

**IT IS HEREBY ORDERED** that the following two classes of employees shall be

provided with notice of this lawsuit:

> **Server Collective Members:** All current and former employees who
> worked for Defendants as servers at any time within the three (3) year
> period preceding January 2, 2024, and were paid a direct cash wage of less
> than minimum wage.

> **Bartender Collective Members:** All current and former employees who
> worked for Defendants as bartenders at any time within the three (3) year
> period preceding January 2, 2024, and were paid a direct cash wage of less
> than minimum wage.

**IT IS FURTHER ORDERED** that the Court authorizes the expedited issuance of the

Notice of Collective Action and Consent Forms attached as Exhibit 31 to Plaintiff's Motion, to

be disseminated by mail and a website solely dedicated to disseminating the Notice of Collective

Action and Consent Form.

**IT IS FURTHER ORDERED** that the Court authorizes the expedited issuance of the

Notice attached as Exhibit 32 to Plaintiff's Motion, to be delivered or otherwise disseminated by

email and text message.

17

**IT IS FURTHER ORDERED** that counsel for Plaintiff's Counsel may contact putative collective members by telephone to verify mailing addresses or email addresses.

**IT IS FURTHER ORDERED** that Plaintiff is authorized to maintain a website limited to the content of Exhibit 31 and offer the putative Class Members the option to consent to join this collective action through the use of electronic signatures.

**IT IS FURTHER ORDERED** that the Parties shall comply with the following schedule:

| | |
|---|---|
| **No later than 14 days from the date of this Order** | Defendants shall provide to Class Counsel in Excel (.xlsx) format the following information regarding all Putative Class Members: full name; last known mailing address(es) with city, state, and Zip Code; all known email address(es); beginning date(s) of employment; ending date(s) of employment (if applicable); locations worked; and all known telephone number(s). |
| **Within 21 days of receiving the contact information for all Putative Class Members** | Class Counsel shall send the Court-approved Notice and Consent Form (Exhibit 31) to the Putative Class Members by First Class U.S. Mail; Class Counsel may send the Court-approved Notice (Exhibit 32) through text message and email; and Class Counsel may maintain a website limited to the content of Exhibit 31 with the option to sign electronically. |
| **Within 3 days of the initial mailing and emailing of the Notice of Collective Action** | Class Counsel shall file an Advisory with the Court indicating the date of delivery of the Notice of Collective Action and Consent Form. |
| **No sooner than 30 days after mailing and emailing the first Notice to the Class** | Class Counsel shall send reminder notices to Class members who have not yet responded to the Notice. Class Counsel may send reminder notice by sending Exhibit 33 via First Class U.S. Mail and resending Exhibit 32 via email and text message. |
| **60 days from the initial mailing and emailing of Notice and Consent Forms to Potential Class Members** | The Putative Class Members shall have 60 days to return their signed Consent forms to Class Counsel for filing with the Court (the "Notice Period"). |
| **No later than 15 days after the close of the Notice Period** | Class Counsel shall file with the Court all signed Consents to Join |

**IT IS SO ORDERED.**

SIGNED this 2nd day of January, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE